IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ANTHONY D. LONG,

           Plaintiff,

v.                                        CIVIL ACTION NO.   2:15-cv-01202

NATIONSTAR MORTGAGE LLC,

           Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Defendant Nationstar Mortgage LLC's Partial Motion to Dismiss [ECF No. 17] and Motion to Consolidate.  [ECF No. 36.]  Also pending is Plaintiff Anthony D. Long's Motion to Strike Portions of the Motion to Dismiss.  [ECF No. 25.]  For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** the Partial Motion to Dismiss, **DENIES AS MOOT** the Motion to Consolidate, and **DENIES** the Motion to Strike.

        I.        FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following facts are drawn from the Amended Complaint and, for purposes of resolving the motion to dismiss, are regarded as true.[1]  Plaintiff Anthony D. Long purchased his home in December 2007.  He financed the purchase through a purchase money loan from Flagstar Bank with a principal balance of $67,000 and a yearly interest rate of eight percent.  Flagstar Bank

---

[1] Plaintiff's allegations, where appropriate, have been confirmed by reference to the parties' Note and Loan Modification Agreement. (ECF No. 17-1, Ex. A (modification agreement); ECF No. 17-2, Ex. B (Note).)  These contractual documents are attached as exhibits to Nationstar's motion to dismiss.   Because they are both integral to the Amended Complaint, they are proper for consideration in evaluating a motion for 12(b)(6) dismissal.  *See Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013).

transferred the servicing of this loan to Defendant Nationstar Mortgage LLC in approximately October 2009. Upon the transfer, Nationstar notified Plaintiff that his current loan balance was $66,382.99. Plaintiff contacted Nationstar in December 2009 with a request to reduce his monthly payments. In response, Nationstar offered to reduce Plaintiff's interest rate to two percent for five years, with a slow increase thereafter to a maximum rate of 5.125 percent for all loan periods after February 2018. Under the proposed loan modification, Plaintiff's new principal balance was $76,615.48—over $10,000 more than the balance just two months prior. The sudden increase in loan balance was ascribed to a "substantial amount of late fees, non-itemized default charges, and alleged corporate advances supposedly attributable to periods before Nationstar took over servicing of this loan." (Am. Compl. ¶ 29, ECF No. 20.) It also included past-due interest which Nationstar planned to capitalize and add into his principal balance. Nationstar required Plaintiff to accept responsibility for these additional charges to secure the lower interest rate he desperately needed. Plaintiff entered into the loan modification on January 15, 2010. (ECF 17-1, Ex. A.)

During the course of the next several years, Plaintiff routinely struggled to make regular mortgage payments. His home appears to have been scheduled for foreclosure on at least four separate occasions between 2011 and 2014. Each time Nationstar threatened foreclosure, Plaintiff submitted a large lump sum payment in the amount of his arrearage only to have the payment rejected, sometimes multiple times, by Nationstar. Nationstar allegedly rejected the payments because they did not include legal fees it had incurred in the foreclosure process for which Nationstar also demanded reimbursement. These legal fees were not collectible under the parties' contract and, as Plaintiff alleges, cannot be charged to borrowers under West Virginia law. (*See* ECF No. 17-2, Ex. B (excluding attorney's fees from the expenses Nationstar can recover from Plaintiff in

2

enforcing the parties' Note).) On at least two occasions, Plaintiff succumbed to Nationstar's demands and paid hundreds of dollars in unlawful legal fees in an attempt to save his home. Plaintiff's home was most recently scheduled for foreclosure sale on October 7, 2014. On that date, and after Nationstar thrice rejected Plaintiff's attempts to pay the arrears, Plaintiff rushed to the place of the scheduled sale and begged the foreclosure trustee to accept his payment. The trustee cancelled the sale, but Nationstar continues to demand payment for over $500.00 in legal fees.

Plaintiff filed suit against Nationstar in the Circuit Court of Nicholas County, West Virginia on December 10, 2014. His Complaint alleged a number of illegal debt collection abuses and violations of law through the servicing of his mortgage. Nationstar was served on December 29, 2014, (ECF No. 1-1 at 3), and timely removed to this Court on grounds of diversity jurisdiction on January 28, 2015. Plaintiff moved to amend the Complaint on March 27, 2015, seeking to convert one of his claims into a class claim. The Court granted the motion to amend on May 14, 2015. The Amended Complaint alleges three class claims and seven individual claims for relief. The class claims are premised on the allegation that Nationstar routinely assesses and collects illegal fees from West Virginia borrowers in violation of the West Virginia Consumer Credit and Protection Act ("WVCCPA"). The seven individual claims for relief allege violations of the WVCCPA (claims one through three); breach of contract (claim four); a violation of West Virginia Code § 38-1-15 (claim five); fraudulent inducement (claim six); and inducement by unconscionable conduct in violation of the WVCCPA (claim seven).

Nationstar filed its motion for partial dismissal of the Amended Complaint on May 28, 2015. It argues that each of Plaintiff's claims are barred, at least in part, by the res judicata effect of a release of claims issued in a prior class action of which Plaintiff was a member. In a prior case in

this district, the Court accepted a proposed settlement agreement in a class action brought on behalf of West Virginia borrowers with loans serviced by Nationstar between the years 2007 and 2011. *See Triplett v. Nationstar Mortgage, LLC*, No. 3:11-cv-00238 (S.D. W. Va. Oct. 16, 2012).[2] The *Triplett* class was composed of three distinct subclasses: Subclass A, borrowers who were assessed late fees in excess of $15.00; Subclass B, borrowers who were mailed form debt collection letters including the term "expenses of collection"; and Subclass C, borrowers whose partial loan payments were returned prior to the date of acceleration of their loans in violation of the WVCCPA. *Triplett*, No. 3:11-cv-00238, ECF No. 78-1 at 2 (S.D. W. Va. Oct. 16, 2012) (unreported disposition). The *Triplett* Settlement Agreement included an expansive release of claims in which class members released all claims against Nationstar arising out of the circumstances defined in the Agreement up through November 16, 2012, the Agreement's effective date (hereinafter "Effective Date").[3]

Nationstar proposes that Plaintiff's first, second, third, fourth, sixth, and seventh individual claims are barred, at least in part, because they arise from actions taking place prior to the Effective Date. It also seeks the dismissal of Plaintiff's fifth, sixth, and seventh causes of action for failure to state a claim. Nationstar also postulates that Plaintiff may be an inappropriate class representative if his claims are barred by the prior settlement. Plaintiff answered Nationstar's motion to dismiss initially with a motion to strike and, later, with a response in opposition. As set forth in his response, Plaintiff asserts that Nationstar has waived the affirmative defense of settlement and release because it was not alleged in Nationstar's answer to the Amended Complaint.

---

[2] Nationstar relies on the *Triplett* Final Approval Order, docketed as ECF No. 78, and the Class Settlement Agreement ("*Triplett* Settlement Agreement" or "Agreement"), docketed as ECF No. 70-1, Ex. A.

[3] Under the Agreement, class members released Nationstar from any claims "up until the Effective Date, arising out of, relating to, or in any manner concerning or involving claims related to late fees, demand letters, returned payments, or default-related fees." *Triplett*, No. 3:11-cv-00238, ECF No. 70-1, Ex. A at 15.

His motion to strike is premised on similar arguments.[4] He further maintains that the Court cannot consider the *Triplett* settlement at this juncture because the underlying facts are neither referenced in nor incorporated into his pleading.

Nationstar has also moved to consolidate this case with *Lanham v. Nationstar Mortgage, LLC*, a case previously pending before the Court. By Memorandum Opinion and Order of March 11, 2016, the Court remanded *Lanham* to the Circuit Court of Kanawha County, West Virginia. No. 2:15-cv-06358, 2016 WL 1057094, __ F.Supp.3d __ (S.D. W. Va. Mar. 11, 2016). The motion to consolidate is therefore **DENIED AS MOOT**.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that "the defendant is liable for the misconduct alleged." *Id.* A motion to dismiss will be granted if, "after accepting all well pleaded allegations

---

[4] The Court will summarily deny the motion to strike. While Plaintiff's arguments may, in substance, be well-taken, a motion to strike is not a proper vehicle to challenge a motion for Rule 12(b)(6) dismissal. Though Plaintiff does not cite any authority for its request, the only conceivable source is Federal Rule of Civil Procedure 12(f). Rule 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Nationstar's motion to dismiss is not a pleading, and the drastic remedy Plaintiff seeks is not available merely to avoid legal argument with which he does not agree. The Court therefore **DENIES** the motion to strike.

in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

### III. DISCUSSION

#### A. Res Judicata

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint; it typically "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). It follows that a motion to dismiss generally cannot reach the merits of an affirmative defense like res judicata. *See Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651 (3d. Cir. 2003) (facts necessary to establish an affirmative defense generally come from matters outside the complaint and cannot be resolved without further development of the record). Still, the defense of *res judicata* or release may be raised on a Rule 12(b)(6) motion to dismiss if the "facts sufficient to rule on [the] affirmative defense are alleged in the complaint." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007); *see Thomas v. Consolidation Coal Co.*, 380 F.2d 69, 75 (4th Cir. 1969) ("Plaintiffs contend that res judicata cannot properly be raised in the context of a motion to dismiss, an argument which we reject as against the weight of authority." (citations omitted)). In "the[se] relatively rare circumstances[,] . . . all facts necessary to the affirmative defense [must] clearly appear *on the face of the complaint*." *Goodman*, 494 F.3d at 464 (citing *Richmond, Fredericksburg & Potomac R.R. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993) (internal omissions and quotation marks omitted)) (emphasis in original).

Moreover, in ruling on a motion to dismiss, a court is not limited to the factual allegations

6

in the complaint but "may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact." *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000); Fed. R. Evid. 201 (governing judicial notice); *see Watterson v. Page*, 987 F.2d 1, 3–4 (4th Cir. 1993) (finding a district court may take judicial notice of official public documents, such as court records, even though the documents are not integral to plaintiff's complaint). Nationstar's motion calls upon the Court to take judicial notice of the *Triplett* Final Approval Order as well as the Settlement Agreement incorporated in that ruling by reference. The Court will judicially notice these documents, finding they are public records and there is no dispute as to their authenticity.

With respect to judicial notice, the Court must emphasize that while the evidentiary rule permits the Court to judicially notice the existence of these documents, it does not authorize the Court to notice Nationstar's interpretation of their contents. *Goldfarb v. Mayor and City Council of Baltimore*, 791 F.3d 500, 511 (4th Cir. 2015) (noting that a court may properly take judicial notice only of "adjudicative facts," or the facts of the particular case, and not a party's interpretation of those facts); *Ohio Valley Envtl. Coal v. Aracoma Coal Co.*, 556 F.3d 177, 216 (4th Cir. 2009) (declining to judicially notice documents where the parties "clearly and reasonably" disagreed about their meaning); *see also* Fed. R. Evid. 201(b). In *Goldfarb*, the United States Court of Appeals for the Fourth Circuit warned that judicial notice "must not be used as an expedient for courts to consider matters beyond the pleadings and thereby upset the procedural rights of litigants to present evidence on disputed matters." 791 F.3d at 511 (citing *Waugh Chapel S., LLC v. United Food & Commercial Workers Union Local 27*, 728 F.3d 354, 360 (4th Cir. 2013)). While it may be proper in rare circumstances to consider the merits of an affirmative defense at the motion to dismiss stage, the Court wades into this territory with caution.

7

Nationstar argues that res judicata presents a bar to Plaintiff's individual claims because they all, at least in part, are based on actions encompassed by the Settlement Agreement's release.[5] Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citing *Cromwell v. Cty. of Sac.*, 94 U.S. 351 (1877)). West Virginia's iteration of the res judicata rule contains the following three elements:

> First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings. Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action.

*Blake v. Charleston Area Med. Ctr., Inc.*, 498 S.E.2d 41, 44 (W. Va. 1997).[6]

The Court will assume, without deciding, that the final judgment in *Triplett* constituted a final adjudication on the merits sufficient to satisfy the first prong of the rule. Even so, the second and third prongs present more of a challenge to Nationstar, the party bearing the burden of proof.

---

[5] Plaintiff initially opposes Nationstar's motion to dismiss on the basis that Nationstar waived the defense of settlement and release by failing to raise the defense in its Answer to the Amended Complaint. *See* Fed. R. Civ. P. 8(b). The argument is without merit. First of all, Nationstar's Answer clearly integrates and relies on the Agreement's release. As to the defense of release, the Answer reads: "Nationstar avers that the named Plaintiff may be [sic] inadequate class representative based upon his release of claims in a prior settlement." (ECF No. 19 at 15.) Second, the pending motion to dismiss was filed prior to the Answer and sets forth, in unmistakable terms, Nationstar's view that Plaintiff's claims are barred by the *Triplett* Settlement Agreement. "An affirmative defense may be pleaded in general terms and will be held to be sufficient . . . as long as it gives plaintiff fair notice of the nature of the defense." *Clem v. Corbeau*, 98 Fed. App'x 197, *5 (4th Cir. 2004) (citing 5 Charles Allan Wright & Miller, Fed. Practice & Proc. § 1274 ); *Peterson v. Air line Pilots Ass'n*, 759 F.2d 1161, 1164 (4th Cir. 1985) ("[W]aiver is not automatic, [but requires] a showing of prejudice or unfair surprise[.]"). The Court finds these filings gave Plaintiff ample notice of the release defense and it declines to adopt Plaintiff's rigid interpretation of the procedural rule.

[6] The preclusive effect of a federal district court judgment in an action based on diversity jurisdiction is determined by looking to the "law that would be applied by state courts in the State in which the [first] federal diversity court sits." *Q. Int'l Courier, Inc. v. Smoak*, 441 F.3d 214, 218 (4th Cir. 2006) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001)). *Triplett*, a diversity action, was adjudicated in this Court; thus, the Court looks to West Virginia law to determine the application of the res judicata defense.

It is beyond dispute that "under elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation." *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984) (citation omitted). It matters not that Plaintiff was an unnamed party. Principles of res judicata may be applied to the claim of an absent class member only if "it [is] demonstrated that invocation of the bar is consonant with due process." *Johnson v. Gen. Motors Corp.*, 598 F.2d 432, 436 (5th Cir. 1979) (citing *Hansberry v. Lee*, 311 U.S. 32, 61 (1942)); *Christman v. Am. Cyanamid Co.*, 92 F.R.D. 441, 452 n. 30 (N.D. W. Va. 1981) ("A judgment in a class action will bind the absent members of the class." (citation omitted)). The Court is not convinced that Nationstar has made such a demonstration.

To support its res judicata defense, Nationstar must prove that it took the necessary steps to provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The purpose of this rule "is to afford members of the class due process which, in the context of the rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992). Actual notice is not required. *See Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012); *Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994) (standard for class action notice is "best practicable" as opposed to "actually received").

The Court cannot conclude at this stage that notice of the *Triplett* class action was provided to Plaintiff in the best practicable manner. In a factually analogous case, a borrower brought suit against her mortgage servicer, Wells Fargo Bank, alleging various errors and omissions in the servicing of her loan. *Brown v. Wells Fargo Bank, N.A.*, 869 F. Supp. 2d 51 (D.D.C. 2012). Wells

9

Fargo moved to dismiss, asserting, as Nationstar does here, that a prior class action settlement barred several of the borrower's claims. The borrower did not dispute her membership in the prior class action, but contested Wells Fargo's allegation that she had received adequate notice of class settlement. In support of its request for dismissal, Wells Fargo submitted evidence that the class members had received notice by mail and by publication online and in a national newspaper. The California court in which the class action was litigated had found these methods "the best practicable means of informing class members of their rights and of the settlement's terms." *Id.* at 65 (citing *In re Wachovia Corp.*, No. 5:09-md-02015-JF, 2011 WL 1877630, at *3 (N.D. Cal. May 17, 2011)). Nevertheless, the United States District Court for the District of Columbia found the inquiry could not be resolved at the motion to dismiss stage, reasoning:

> [Wells Fargo] has furnished no facts demonstrating that Brown was mailed the *Wachovia* settlement notice nor has it submitted a copy of the *USA Today* publication. Indeed, it proffers no actual evidence in support of its claim that notice to Brown met Rule 23 and due process requirements. Instead, Wells Fargo asks the Court to infer that because Brown is a class member and because the *Wachovia* court found that class members received notice by direct mail, notice to her was sufficient. The Court declines to make such an inference. The *Wachovia* court made a summary finding as to over 516,000 class members. Whether Brown was on the notice mailing list is unclear. Because the Bank has the burden to prove this affirmative defense, the mere citation of the *Wachovia* settlement and suggestion that the Court should infer sufficient notice as to Brown is not sufficient.

*Id.* at 65 (internal citations omitted).

As in *Brown*, Nationstar has provided no evidence that the settlement notice—that is, the notice to Plaintiff *specifically*—meets due process requirements. Nationstar has submitted no evidence that Plaintiff's name and address were included on the mailing lists of absent class members; nor has it supplied facts proving that the notice intended for Plaintiff was mailed to his residence. *See Vargas v. Capital One Fin. Advisors*, 559 Fed. App'x 22, 27 (2d Cir. 2014) (notice

10

is adequate where evidence demonstrates that it was mailed to the correct address and not returned to the sender as undeliverable). The prospect of delving into this disputed factual matter only further persuades the Court that the issue of the preclusive effect of the *Triplett* settlement is not suitable for resolution at the motion to dismiss stage.[7] The Court therefore **DENIES** Nationstar's motion to dismiss on grounds of claim preclusion.

### B. Legal Sufficiency of Count Five

Nationstar next challenges the legal sufficiency of Plaintiff's fifth claim for relief. This claim seeks a declaration that Plaintiff's loan is not lawfully secured and an injunction against any future act of foreclosure. It is premised on West Virginia Code § 38-1-15, which reads in its entirety: "Upon the renewal of a loan agreement in the instance when no additional principal is advanced, the original deed of trust is sufficient for the purpose of securing the loan, regardless of any change in the rate of interest." Plaintiff interprets this statute to obligate Nationstar, after advancing new principal as part of the 2010 loan modification, to execute a new deed of trust to preserve its secured interest.

This claim, though creative, appears to be entirely novel. The Court has not located a single case citing this statutory provision for the premise which Plaintiff endorses, let alone any law suggesting that a lender loses its security interest by failing to re-record a deed of trust following a

---

[7] Nationstar relies upon several cases for its argument that issues of notice can be resolved at the motion to dismiss stage; none are controlling precedent and each is distinguishable. The only case cited from this district, *Gravely v. Macy's*, No. 2:11-cv-00232, 2011 WL 7637221 (S.D. W. Va. Oct. 24, 2011), was not a class action. In *Thompson v. Edward Jones*, 992 F.2d 187, 189 (8th Cir. 1993), the Eighth Circuit found the plaintiff's claims were precluded by a prior class action settlement where it was undisputed that the plaintiff had actually received a copy of the notice. As noted above, while the *Vargas* plaintiff disputed the fact that she had actually received the class notice, the defendant submitted proof that the notice was mailed to her correct address. 559 Fed. App'x at 27. Similarly, the court in *Pey v. Wachovia Mort. Corp.* had before it detailed factual information confirming the adequacy of the Rule 23 notice. No. 11-2922 SC, 2011 WL 5573894, at *7–8 (N.D. Cal. Nov. 15, 2011).

loan modification. This lack of authority is alone cause for skepticism, but is not necessarily fatal to Plaintiff's claim. Rather, Plaintiff's claim for relief cannot proceed because it rests on a misinterpretation of the statutory text. The plain language of the statute does not "require," as Plaintiff alleges, that a lender file a new deed of trust to secure additional principal advanced on a renewal loan. By its terms, the statute states precisely the opposite.

Even if the statute's inverse could give rise to a cause of action, its proscriptions are nonetheless inapplicable here because Plaintiff did not enter into a "renewal agreement" in 2007. As a fundamental principle of statutory construction, the West Virginia Supreme Court of Appeals has held: "In the absence of any specific indication to the contrary, words used in a statute will be given their common, ordinary and accepted meaning." *Kings Daughters Hous., Inc. v. Paige*, 506 S.E.2d 329, 331 (W. Va. 1998) (quoting Syl. Pt. 1, *Pennsylvania and West Virginia Supply Corp. v. Rose*, 368 S.E.2d 101 (W. Va. 1988) (internal quotation marks omitted)). The Court finds that the accepted meaning of a "renewal loan" in the banking industry is a loan extended after the expiration of its original term, or after the date of maturity. *See* A&S Pratt and Sons, *Commercial Law Banker's Handbook* 21.1 (2013) ("In a simple renewal, the existing loan matures and the renewal contains all the same terms, conditions, and covenants as the original transaction."). Plaintiff's factual allegations and a cursory review of the parties' 2010 contract make clear that the parties entered into a loan modification agreement, not a loan renewal. (ECF No. 17-1, Ex. A (parties' 2010 contract entitled "Loan Modification Agreement")). Plaintiff's loan was decades from its expected maturity date at the time. Plaintiff does not state a plausible claim for relief under West Virginia Code § 38-1-15, and his fifth individual claim for relief will be **DISMISSED.**

  C. *Legal Sufficiency of Counts Six and Seven—Compound Interest*

12

Plaintiff's sixth and seventh claims for relief allege fraudulent inducement and unconscionable conduct. These claims arise from a common core of factual allegations, namely, that Nationstar unfairly conditioned Plaintiff's loan modification on his willingness to accept the addition of thousands of dollars of late fees, default charges, corporate advances, and past-due interest to his mortgage balance. Plaintiff alleges Nationstar "intended to capitalize [the interest charges] in order to illegally receive compound interest." (Am. Compl. ¶ 31, ECF No. 20.) Nationstar challenges the assertion that capitalization of past-due interest is illegal; to that extent, it seeks dismissal of the sixth and seventh claims as a matter of law.

Compound interest is commonly defined as "[i]nterest paid on both the principal and the previously accumulated interest." *Interest*, Black's Law Dictionary (10th ed. 2014). Agreements to pay compound interest have not found favor in West Virginia courts, which normally apply the rule that "interest should not bear interest." *Hensley v. W. Va. Dep't. of Health and Human Res.*, 508 S.E.2d 616, 626 (W. Va. 1998) (quoting *Hamilton v. Wheeling Pub. Serv. Co.*, 107 S.E. 401, 403 (W. Va. 1921)). The general rule, however, "is not universal in its application." *Hamilton*, 107 S.E. at 403. An agreement to pay compound interest, for example, "is valid if made after the interest which is to bear interest has become due and payable." *Hensley*, 508 S.E.2d at 616 (quoting *Hamilton*, 107 S.E. at 403).

Plaintiff has identified no legitimate support for his bald assertion that capitalization of arrearages is somehow unlawful. Though his arguments are somewhat unclear, he appears to argue that a lender cannot capitalize past due interest and charge interest on that sum until the date of the loan's maturity, which in this case is January 1, 2038. (ECF No. 17-2, Ex. B. at 2.) His argument is unpersuasive for several reasons. The relevant provision in the parties' Note reads as follows:

13

"If, on January 1, 2038, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the Maturity Date." (*Id.*) The plain meaning of this clause is that the borrower is accountable for any unpaid loan balance remaining at the time of maturity. Under no reasonable interpretation does it prevent the creditor from demanding, during the life of the loan, payment of interest or principal that is unpaid from month to month. Moreover, Plaintiff's argument that Nationstar was not authorized to capitalize his arrearages under the terms of the Note fails as well. The Note certainly does not forbid the practice, furthermore, Plaintiff's loan modification agreement explicitly amends the new loan balance to include "any interest capitalized to date." (ECF No. 17-1, Ex. A at 2.)

The Court also finds that Plaintiff's interest, as a portion of his monthly mortgage payment, was "due and payable" under the Note on the first of each month.[8] *Hensley*, 508 S.E.2d at 616. The parties were therefore free to enter into an agreement by which Nationstar would recalculate Plaintiff's monthly payments at an interest rate far lower than that extended to him originally in exchange for Plaintiff's agreement to pay interest on the interest that remained unpaid. While Plaintiff may ultimately prove that Nationstar's practices were unfair, that he was strong-armed into agreeing to the inflated principal balance, or that Nationstar falsely represented that he was somehow required under the terms of the parties' original contract to pay "interest on interest," there is no support for his categorical assertion that a lender's capitalization of arrearages is illegal. To the extent Plaintiff's sixth and seventh claims for relief so allege, they are **DISMISSED**. The Court notes that these claims otherwise survive, at least in part, because the past-due interest allegedly

---

[8] Under the Note, Plaintiff agreed to "pay principal and interest by making a payment every month" and was accountable for a late fee if the monthly payment was more than fifteen days past due. (ECF No. 17-2, Ex. B at 1.)

14

made up only a part of the lump sum tacked on to Plaintiff's loan balance as part of the loan modification.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Nationstar's Partial Motion to Dismiss [ECF No. 17]. Specifically, the motion is **GRANTED** on Plaintiff's fifth claim for relief, which is **DISMISSED** in its entirety, and **GRANTED IN PART** on Plaintiff's sixth and seventh claims for relief, which are **DISMISSED IN PART** to the extent they are premised on the alleged illegality of Nationstar's capitalization of past-due interest as part of Plaintiff's loan modification. The Court further **DENIES** Plaintiff's Motion to Strike [ECF No. 25] and **DENIES AS MOOT** Nationstar's Motion to Consolidate [ECF No. 36].

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 28, 2016

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE